The next case on this morning's docket is the Department of Transportation State of Illinois v. Phillip Sheets FKA Alice Classen Limited Citizens Community Bank in St. Clairtown, Illinois We have William Broome for the appellant And we have Benard D'Souza for the athlete You may begin when you're prepared to, Mr. Broome May it please the court Good morning, Your Honor The plaintiff appears by Lisa Madigan, Attorney General Michael J. Luke, Senior Assistant Attorney General William Steele, Jr., Patricia Small And me, William Broome, Special Assistant Attorney General This case involves two major issues The first issue is the question of jurisdiction And just a little background on this to set the table This was an eminent domain case involving QuickTake And then on September 3rd, 2009, the jury rendered a verdict Judgment was entered on that verdict The issue here is, was there a timely post-trial motion? We, of course, admit that it was, and here's why When the jury rendered its verdict, on that day, the court signed docket minutes If this had not been a QuickTake case Or if the jury verdict would have been less than what the PJC was Then in that situation, this case would have been over But this is not the case What happened in this case is that there was a large difference between the jury verdict and the PJC And this case is not over This case does not have a final judgment until that interest is determined And the date of possession, which starts the clock, is determined The interest, well first of all, neither the jury's verdict nor what the judge did on September 3rd address the question of interest It's not final because a final judgment is a judgment that determines all the issues presented in the case That fixes and ascertains absolutely the rights of the parties The September 17th order is the only order that qualifies under the Eminent Domain Act As an order that fixes the amount of just compensation And also, that directs where the payment is to go Now that is a specific eminent domain statute, 10-570, which is slightly discussed Also, Illinois has a statute called interest payments in a quick take case only, 25-30 And that requires interest be paid at 6 cents per annum on the excess of the just compensation found by the jury In this case, $10 million And what the PJC was, the quick take money of $189,000 From the date the defendant surrendered possession The court had to make two things What's the interest rate and what's the date of possession However, the 6% is not binding The 6% is merely a floor And we've cited cases why it's a floor  That the court can apply a higher rate under certain circumstances In fact, one of the cases, gas, a much higher rate was applied But in this case, when the defendant tendered the order to Mr. Steele The defendant essentially conceded that 6% was reasonable under the circumstances And he also accepted the date of the PJC order, which authorized the department of possession as the date Of course, it's in the defendant's interest to get here as early as possible to do that That was not an agreed order That was an order that was unilaterally tendered by Mr. Usursa to Mr. Steele Mr. Steele did not object Why? It fixes a low rate and it fixes an acceptable date So that became the judgment That decided the last two things that were not yet decided The components of just compensation The interest rate and the period Now, the defendant states this case is just like Gary Wheaton Bank We disagree Gary Wheaton Bank has no specific reference that it was a quick take case None In the exchange of the judge and the court, or excuse me, the counsel The judge asked for an ancillary order reflecting the jury's award of $7.58 per square foot No discussion between the judge and the counsel about the interest rate No discussion about how long the interest would have to be paid Now, I concede the total authority has quick take powers But there's no showing in this case that they were exercising And there are many cases involving a tollway on appeal Sometimes they're quick take cases, some of them are not We don't know about this one We just don't know More on point is the gas case where the judge entered a judgment on the verdict On the difference between the PJC and the jury's verdict And then they also included interest Defendant says there's nothing about the September 17th judgment that altered September 3 That's simply not correct The September 17th judgment modified and increased the amount of money that the plaintiff would have to pay Because interest is part of just compensation There's another way to look at this case Under the Gibson case, which is cited in our reply brief Following that case, the Supreme Court issued Rule 274 New Rule 274 is effective January 1, 2006 And it basically says that the clock gets reset when there is another order under certain circumstances Members of the Court, this is that circumstance This is that situation You had a September 3rd order Then you had a September 17th order Which modified, increased, and superseded the September 3rd order September 17th order became the only final order that adjudicated everything In the comments, the Supreme Court Rule 274 discussed that it codifies the Gibson case Again, a new rule Defendant says Pempec is just like us It's not Pempec is a very specific case Involving attributing fault between an employer and a defendant A bodily injury case The second judgment did not supersede the first judgment Again, that is a different concept Our case is a 274 case Which again, the Gibson case followed Pempec The Illinois Supreme Court issued 274 Which adopted the Gibson case Department's notice of appeal was filed within 30 days of the September 17th judgment Because it was filed and there was a timely notice of appeal This Court has jurisdiction to hear the appeal The second question is whether the trial court abused its discretion In completely eliminating and striking the plaintiff's sole evaluation witness Several things happened Prior to court, prior to the trial Very quickly, shortly before trial The defendant filed lengthy motions and briefs Seeking to have the three comparable sales relied upon by the plaintiff's appraiser To be stricken for various reasons A hearing was held on that motion The trial court ruled for reasons I'll go into That those were not appropriate comparable sales for the appraiser to review And therefore, since the appraiser had no comparable sales to determine The trial court struck him as a witness The trial court abused its discretion in several respects First of all, by shifting the birth of proof From the person making the motion, the defendant, to the plaintiff That is, they said, well, there was project impact And you have to prove it, that it didn't affect the sales Well, there was no proof whatsoever The burden was on the defendant To prove that the sale prices of L1 and L2 Had in fact been impacted by public knowledge of the approval There's testimony by Mr. Price That there was some public knowledge of that this project was coming So L1 and L2 were in July of 2003 A project report was issued in August of 2003 And the court apparently agreed with the defendant's assertion That it was IDOT's burden to prove that nothing about the project impacted those sales And that was an abuse of discretion Because the defendant had the burden of going forward with that motion Now, had the defendant waited during trial And objected at some point during Mr. Ryker's testimony The burden at that point during trial Is on the state to produce proper testimony right then If they're using a shotgun in advance They've got to say and present some evidence They didn't present any evidence And the court actually just sort of found out of whole cloth That there was influence Those sales must have been influenced by the fact that there was a project Because everything was under threat of condemnation That is a misuse, a misapplication of the concept of threat of condemnation The court's ruling was that once the public was aware of the project All property in the project area was under the threat of condemnation Where L1 and L2 were in the area of the project One was right two properties away And the other was across the street from that property They were in the project But those sales were sold to other people They were not sold to the state of Illinois As is set forth in the Shapiro case Threat of condemnation is an evidence issue That you can't use a sale, in this case, to the state of Illinois Because it's not sold freely and openly in the open market The court concluded that it was likely, at least highly possible And there was no evidence Note that the sales were impacted by the project Either appreciation or depreciation But there was no evidence to present it The court abused its discretion by relying on a mere presumption That public knowledge about the project negatively affected the prices Of those properties on L1 and L2 And shift the burden to the DOT to prove lack of impact By the way, Mr. Price testified about that And, in some regard, contradicted that The court found otherwise The court also abused its discretion with respect to Parcel 26 The defendant repeatedly said that Parcel... Excuse me, Parcel abused its discretion with L3 The third comparable sale Let me start again Parcel 26 is a subject problem 148 was right on 1315 The defendant repeatedly asserted that Parcel 26 was zoned commercial But Rifer's comparables were not Actually, that's... it's not completely true About 85 acres were zoned highway business, B2 The rest was zoned agriculture But the defendant further said that the comp L3 is bad Because without rezoning of the comps It can't ever be comparable to the subject property The defendant never asserted that Rifer did not make adjustments Because of difference in zoning This is very significant Because when you read the court's ruling When she ruled on August 31st in the hearing She brought up on her own That Rifer made no adjustments for zoning And there are different zoning And that was part of her ruling That was never complained of by the defendant Probably, as we pointed out in our brief Because they knew that Rifer did have two adjustment grids For his comparable sales That he did make adjustments But the court ruled on that basis There's no evidence before or on that Rifer's opinion was Of highest and best use Was agriculture with urban development potential Everyone's entitled to have their value Being fair cash market value at highest and best use That was Rifer's opinion His comparable sales were consistent with that However However Our opinion, our expert's opinion Doesn't have to be the same as the defendant's expert's opinion On highest and best use That's part of the problem in this case Defense was arguing in a very sophisticated way That Rifer's opinions were different than ours Rifer said urban development He said it was agriculture with urban development potential Which meant a commercial use Or a residential use Or a more high density residential use Without saying exactly what's going to happen His comparable sales L1, L2, and L3 Were all consistent with that He should have been allowed to testify Also The finding that the existence of zoning  Does not, per se, render The evidence of a comparable incompatible Or incompetent There's lots of factors on What type of a property is comparable Everyone tries to find a perfect one We can never find a perfect one A reasonable probability of rezoning Was not appropriate Because Rifer's testimony And his opinions, which were before the court Were consistent So By relying upon Rifer's The defendant's assertions Without looking at the evidence The court abused its discretion In the three ways I've pointed out Now The defendant says correctly No offer of proof was made at trial Concerning what opinions of value Rifer would have This was not a waiver An offer of proof is not necessary If the trial court understands The nature and the character of the evidence To be introduced She knew that Everyone knew He would have a number Clear that the court understood Exactly the nature and character Of Rifer's testimony And it's not a waiver that no offer of proof was made However If this court finds otherwise It can apply The plain error doctrine Plain error is an error complained of Is so prejudicial And so egregious That it deprives the complaining party Of a fair trial And substantially impaired The integrity of the judicial process itself That doctrine is applicable herein It was a prejudicial error The defense had three witnesses The state had one He was stricken Rifer's Excluding Rifer's comparable sales Resulted in a total exclusion of Rifer And deprived the department Of any opportunity To present evaluation evidence To the jury The error was egregious Because it deprived The department of a fair trial And impaired the integrity Of the judicial process Because why? It changed the range of evidence And Rifer testified From $199,000 All the way to Mr. Sheets $14.5 million To Mr. Vasson's limit Which was about $9.8 million To Mr. Sheets $14.5 million The range The verdict must be within The range of the evidence In the remaining case By excluding Mr. Rifer Prior to trial There was no chance For the department To avoid a verdict Of less than $9.8 million That was an abuse of discretion Thank you very much Thank you You'll have the opportunity For a follow-up And we have Mr. You may begin Good morning Counsel May it please the court Your honor I agree with Mr. Broome As to what the issues are in this case The first issue is A jurisdictional question Was the post-trial motion Filed in a timely manner? The second issue is of course Whether a judge Judge Dauber in this instance Abused her discretion In excluding the three comparables That Mr. Ryder was using As a basis for his opinions Of the value of partial 26 If the three comparables are no good He has nothing left And therefore ultimately His opinion then goes Because there's nothing left But let's talk about The jurisdiction question IDOT in its post-trial motion In response to our questioning The fact of whether their post-trial motion Was timely Cited Rule 272 Of the Supreme Court And stood by it And alleged that This rule controls And that Judge Dauber Never signed the order Entering the judgment on the verdict And therefore There was no judgment on the verdict On September the 3rd When we appeared in court To argue the motion IDOT became aware That they had their facts wrong That in fact Judge Dauber did sign the order On September the 3rd And therefore Rule 272 Had been complied with IDOT then went Well, never mind Forget 272 Because it doesn't help us They now go on and talk about No, it's 274 Rule 274 applies This is a 274 case Because The judge Had to make determinations as to Set-offs Interest The time When interest was to be calculated Etc All these factors Flow from The entry of the judgment On September the 3rd Why do I use the phrase flow from? I'm sure the Court of Justice is aware That that's what you look at To determine whether Post-judgment Proceedings in fact Modify or change The prior order so as To stop the clock ticking Under Rule 272 In other words They're saying that the order Of September the 3rd could never have been A final appealable order Because There were these other factors to consider We argue that Those factors that were to be Considered by the Court Are in the nature of Setting interest Applying set-off for what was already Paid and the time to Calculate this interest And merely to do that In every case Where judgments are entered And the Court has to decide Things such as set-offs For instance if Another defendant had settled and paid Those types of Calculations have always been considered Not a modification of the original judgment Not a different judgment But actions that Flow from the judgment Much as enforcing the judgment is Collecting the judgment is Citations to discover assets On the judgment, all these types of things The Court may do Our position is That Judge Dollar in entering the order Of September 17th Did nothing to change The judgment And the verdict of the jury It was not a different Claim, it was the same Claim It was not the same as Making a claim for Payment of expert Fees for instance, subsequent To the entry of the jury Verdict and judgment of the jury Verdict, because that would require Proof of a different matter It all dovetails Down to was the judgment Being modified Was the Court required To change the judgment In fact, the Court Couldn't do the subsequent things required By the Eminent Domain Act It couldn't do these things Without knowing What the verdict was That's the principle You can't, who cares What the interest is, who cares what it is It has to apply to the principle That's why Mr. Broome mentioned that Only if the verdict were More than the preliminary Just compensation Would there be a problem with this So our position is Succinctly I've stated it enough times Rule 272 applies There is no exception Carved out in this instance for Rule 272 The Supreme Court rules control Legislative action And that's the rule that Needs to be applied Rule 274 I'm sure you've all read it Says that if a subsequent order Modifies, or is a different order Modifies The judgment Then the clock didn't start Ticking on September 3rd Now That's the Jurisdictional issue and we believe That the only difference In this case That IDOT Is hiding behind is that fact That well you know under The Supreme Court decision And I call it Perry-Jill's But I guess it's American bang too Where Justice Harrison in October Of 94 determined that You know this right to Interest after there's Been a quick take It's a loss of use of your money The legislature Sets it at 6% You know this is a constitutional Matter here That's a floor As Mr. Broom says If you want you can apply for For more and have a hearing on that All that kind of stuff. You can even ask the jury To do it in the first place But if you don't the waive the right to have the jury do it And then secondly you can maybe have The judge do it And the judge therefore would have the opportunity If asked And only if asked To determine whether the interest Rate should be 6% Or more than 6% We argue that Even that determination still All flows from the judgment And does not Stop the clock ticking On when you should file Your post trial motions When you should file a notice of appeal Rule 272 Was put in As I know about this Because I've been around a while It was placed there specifically To put this thing to rest When you have a jury Come in and there's the verdict The judge says judgment on the verdict Puts it in the documents and signs it The clock starts ticking And everybody knows that It's out there All you have to do is file a post trial motion File a notice of appeal Within 30 days You know if you're wrong on it They can always tell you But if you're not wrong If you're wrong on it And the other way where you're late You've got a problem as we do here And it's not some sort of thing That Judge Daugherty did here This is not something that I did This is not something that my clients did The problem with this jurisdiction here Is what I got failed to do And that kind of dovetails Right into the second issue Which is Oh by the way You know the jurisdictional issue Was yours to know But with respect to the second issue As Mr. Perkins stated And I agree That standard of review is an abuse of discretion It is clear In the Shapiro case that we cited That in eminent domain cases It is within the sound discretion Of the trial court To determine the admissibility Of comparable sales We filed Our motion To strike The comparable sales We did it as a motion in limine Which apparently Gave us a bigger burden of proof Than if we had made the motion During trial I don't get that Because it really goes to the issue of Foundation This person Mr. Ryder Is their expert witness He's disclosed as an expert He renders opinions under the rules As an expert witness We challenge the foundation Of his opinion Saying The only thing you have According to your deposition testimony Is these three constables You have nothing else And you're bringing your opinion based upon this You have made no other Attempt at an approach In this case, you're using strictly the sales comparison Approach, which means you have to have Comparables And we've narrowed it down to all that And he said, that's it We then filed a motion to strike saying Well, then you can't render an opinion Because your comparables are tainted We allege the first two Comparables were tainted For a variety of reasons, but the main one was That they were within the project This project was announced In 1989 These sales took place In 2003 Mr. Price Who is the IDOC representative Testified at the motion hearing That Well Our final Project wasn't Really, it wasn't finalized until after These sales in 2003 However, we did have some meetings And brought people there, public meetings Saying this is where the project is This is what's going to happen And by the way, all you people Fronting Route 13 and 15 in this area You no longer have direct access To the highway You now have a lost access You have a restricted access Which is the whole key to damages In this case So that's what they were letting do Long before 2003 At their own meetings Mr. Price testified Also that any real estate broker Any appraiser, or anybody Considering price for these Comparables in 2003 Should know All the circumstances surrounding the property Like, oh by the way There's not going to be any direct access So you may not want to put your McDonald's there These are the things that are out there This is why IHUT's own manual says We don't want to use Sales That were within the project They sent out a thing in the Quarter out there To everybody This is all in the record before the court That I got Sent letters to people saying Oh by the way on this quarter We're going to check your prices and we're going to do it like this We're going to give you your fair just compensation Fair market value for your land We do it by comparing it to other sales Of properties Not within the court It's their own rules And this was all testified to This is what Judge Diver had before her Okay Then we get parcel 3 L3 The third parcel That was Mr. Ryder Who testified and the excerpts of the Deposition that were provided to the court And it's price It said L3 It's located on It's in Smithton On Illinois 158 Which is unusual because of course that's Millstock Smithton But that's not That's not why his testimony Was taken out. I just point that out to show That he didn't present anything There was nothing there It takes testimony To justify using this comparable Now Why is a comparable L3 Not a good comparable Because Under the federal guidelines Under the appraisal institute Under I-2000 annual It's axiomatic That you cannot use a piece A comparable sale Which has to be similar Comparable to the subject Which has a different Highest and best use Highest and best use Is a thing that every appraiser Has to look at. You look at the Subject property and say what is it's highest and best use And then when you look for comparable You have to say What is that comparable sale's highest and best use You can make an analysis They don't necessarily have to have the same zoning But in order to have the same Highest and best use, the use has to be Legally permissible Which means zoning If they don't have the same Zoning, the appraiser must Under good appraisal practice Look at the comparable And say Well, it can have It can be rezoned It can have the same Legally permissible use as the subject property Now in this case, the judge says The subject property had B2, I believe they call it Zoned by free room, 85 acres Which is commercial You can put a box store on it Okay Look at this comparable It's zoned Agricultural But he says, but it could be used for residential Yeah, but Does it have any chance of being used For commercial We point out at the hearing Present to the court The specific and comprehensive plan Which shows the location Of this property The alleged cop As king in Smithton Zoned agricultural But it will be zoned Residential Never to be zoned Commercial They earmarked it strictly as residential We raise this point To the judge, say judge Therefore, the factor in highest and best use Legally permissible This property could never be used commercial Therefore, you can't compare it to a property That is, in fact Admitted to by the IW That its highest and best use Is part of commercial Therefore, the axiom You can't compare apples to oranges Appraisers can't do it either And you can't adjust And turn An apple into an orange Adjustments are made Because they don't have the same zoning For like 2%, 5% Because after the appraiser Makes a determination that They could probably get that rezoned You factor in That a buyer is going to have to pay a little money To get that done To go to the aggravation Of getting it done Even though it will get done So you factor down at least a little off On what the purchase price is going to be Because the buyer has to do that Those are the adjustments that Ryder can make But he still has to determine That they have the same Highest and best use This was all presented to Judge O'Donnell Now That's what we thought That more than meets The level of proof That we had It then became incumbent Upon IW To say Why the counterpulls were really okay Why they did have the same Highest and best use Why they weren't project impacted What did they do? Absolutely nothing Mr. Ryder Never testified He never appeared To lay a foundation for his opinion The judge in this case Never knew his opinion Number As it's a record Until December When they argued the post-trial motion Three months later Never in the record That's all there was There's nothing in the record There's not an objection to our presenting evidence By way of hearsay because we had exhibits And a Smith and Platt Or a competency plan There was no objection to that Last time I heard you had hearsay unless you object to it There was no objection made This is what the judge had before her Now How in the heck Can one Abuse Their discretion Based upon Elements that are not within The record before her IDOT Came up and finally put in Ryder's appraisal Full appraisal not until the post-trial motion And argued Well Mr. Ryder did say these things He certified this He self-certified this document Therefore he must have That made him follow all the rules Therefore he did do all these things He did make all these adjustments And did come up with an opinion They slipped that one in After the trial How can Judge Schauber Have that She had no knowledge of that when she made her decision Her decision and her abuse Has to be Based upon only The materials presented to her And in this case It would not only be Not an abuse of discretion For what she did It would have been an abuse of discretion Not to do what she did Now That's just the hearing Foundation And the last I looked Rules of evidence You still have to have that foundation Before you can get an opinion of an expert He never testified He never testified Then we go to trial day Three days later, four days later We're in the trial And Mr. Ryder by the way There were two other parsons here Who was confident to testify about those Because he had more bonds He didn't have just these three, he had eight more Well it ended up being Separate And that was with the consent And actually almost with the request That why don't we just sever these two out And we'll just go ahead and try Parson 26 That way I don't have to have Ryder here So Ryder doesn't show up Nowhere is there An offer of proof You can talk plain air You can talk about all that But the point of offer of proof is How does this court review When it doesn't have any evidence To review You don't For purposes of this case You don't even know his number You don't know what he was going to say You have no clue Because you have no offer of proof And all they had to do was bring Mr. Ryder in Make an offer of proof Now Mr. Broome says Well this is egregious Draconian You can finish your Thought If you are finished I guess I could go on forever I'm sorry We've talked about this before But I just don't believe there was Aggression here I also believe that you have a problem with jurisdiction Because of Not what the courts did Not what anybody else did But because of what IPA did And as we point out You know You don't get a do over In court You play by the rules And By the rules in this case This verdict should stand Thank you Mr. Musursa You have the opportunity for rebuttal Mr. Broome People please report Yes Members of the court Mr. Musursa cited Supreme Court Rule 272 I'd like to read the first line If at the time of announcing Final judgment The judge requires September 3rd order was not final judgment Interest is a necessary Mandatory Constitutional part Of just compensation This property was taken Legally Four years before The fact that Mr. Musursa did not ask For more interest or did not ask To have a hearing on it Doesn't mean it was over on September 3rd If he had not asked for interest Within the 30 days Would it have been final You're saying it goes on Until No matter how long The judge rules on the question of interest Even if it's not requested Even if it's not The state would request it State would request Sure To have that determined Because on September 3rd This is a good point The state has no idea how much it has to pay It knows it has to pay $9,811,000 The difference between the PJC and the jury verdict But has no idea How much interest to pay Mr. Sheets could have said  6% isn't good enough I can do better, I'm a developer I want more than 6% We could have had a hearing before the jury We could have had a hearing before the judge later That is That's the point This is a 274 case It wasn't final Until the judge ruled on that interest question Now Very briefly  Corridor New concept, we didn't talk about the arguments What happened in Corridor Is the state drilled In the Jefferson Bridge Up around Troy And said sometime 10, 15, 20 years from now We're going to build a road And if the state voluntarily Buys property from you in that corridor If you want to build a house Tell us and we will In that situation, this is a voluntary purchase only We're not using it as a domain We'll value it without looking at property in that corridor Completely different issue The judge obviously, I think Perhaps misunderstood that also During trial As she misunderstood The theory of Under threat of condemnation Mr. Husserl Argued about highest and best use And can't use with different highest and best uses That misses the point Like he uses commercial That misses the point The fact of the matter is On the evidence before the court Mr. Reiter Had a highest and best use Of the subject property in his opinion And his comparables L1, 2, and 3 Were consistent with that He should have testified And Mr. Husserl says it's commercial No, it's not The subject property was 140 acres 85 was highway business 55 was ag Mr. Reiter said his opinion Of highest and best use on 26 The subject property was Agriculture The present use with urban development potential And his comparables Were consistent with that The court abused the discretion In accepting the presumption Of impact The court abused Its discretion Perhaps in not looking at all the material In front of the court Because Reiter's opinions weren't there In conclusion The department requests that this court Find it has jurisdiction Find that the trial court erred In granting the defendant's motion in limine They take the verdict Of the jury in the order Of September 17, 2009 And remand this case To the circuit court Of St. Clair County For a new trial Thank you